BAYLOR UNIVERSITY MEDICAL
CENTER and Sara Thomas,
R.N., Appellants,

v.

Dianna ROSA, Appellee.

No. 05–07–00639–CV.

Court of Appeals of Texas,
Dallas.

Dec. 7, 2007.

James M. Stewart, Brent R. Walker, Stewart Stimmel, L.L.P., Dallas, TX, for Appellant.

James L. Johnson, The Johnson Law Firm, Dallas, TX, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice WHITTINGTON.

In this interlocutory appeal, Baylor University Medical Center (BUMC) and Sara Thomas, R.N. appeal the trial judge's order denying their objections to Dianna Rosa's expert reports and denying their motion to dismiss. BUMC and Nurse Thomas raise two issues: (i) error by the trial judge in finding a sufficient expert report and denying their motion to dismiss, and (ii) whether a deposition satisfies statutory expert report requirements. We affirm the trial court's order.

### Background

Rosa underwent orbital decompression right eye surgery at BUMC. Dr. Harrington performed the surgery to address a condition that causes the eye to swell in the eye orbit resulting in pressure on the eye. Dr. Harrington noted postoperatively in the recovery room that Rosa's vision in the right eye was intact. To control postoperative swelling, Dr. Harrington ordered an ice pack placed on Rosa's right eye until the patient went to sleep. Nurse Thomas placed an ice pack (a surgical glove containing ice) on Rosa's eye and secured the ice pack in place with a velcro strap. Dr. Harrington was later called to examine Rosa regarding swelling. When he arrived, he found the ice pack had been secured with the velcro strap and removed the strap. Upon testing Rosa's right eye, he found blindness (no light perception).

Rosa filed this medical malpractice action against BUMC[1] and Nurse Thomas alleging the loss of sight in her right eye was due to Nurse Thomas postoperatively securing the ice pack with a velcro strap. Rosa alleges pressure from the velcro strap impeded blood flow and caused damage resulting in loss of sight in her right eye.

Rosa served experts' reports from Nurse Cynthia Manning and Dr. Alan M. Berg, and excerpts of the deposition of Dr. John N. Harrington to comply with the statutory requirements for maintaining a medical malpractice action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (Vernon Supp.2007). BUMC and Nurse Thomas challenged Rosa's expert reports and the deposition excerpts of Dr. Harrington. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). The trial judge denied BUMC and Nurse Thomas's motion to dismiss. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). BUMC and Nurse Thomas filed this appeal.

### Jurisdiction

As an initial matter, we address Rosa's contention that the Court lacks jurisdiction over this interlocutory appeal. We have previously concluded we have jurisdiction under similar facts and circumstances as are presented here. *See Cayton v. Moore,* 224 S.W.3d 440, 444 (Tex.App.-Dallas 2007,

---

**1.** Allegations against BUMC are limited to vicarious liability.

no pet.) (court has jurisdiction when trial judge's order denies in part request for dismissal challenging adequacy of expert report under Texas Civil Practices and Remedies Code section 74.351(*l*) (Vernon Supp.2007)). *See also HealthSouth Corp. v. Searcy,* 228 S.W.3d 907, 908 (Tex.App.-Dallas 2007, no pet.); *Harris v. Jones,* 2007 WL 1866879, *1 (Tex.App.-Dallas June 29, 2007, no pet.); *Bidner v. Hill,* 231 S.W.3d 471, 472 (Tex.App.-Dallas 2007, pet. denied); *Romero v. Lieberman,* 232 S.W.3d 385, 388 (Tex.App.-Dallas 2007, no pet.).

### Waiver

Rosa asserts that BUMC and Nurse Thomas waived objections to Rosa's tendered experts' reports by making inadequate objections. Rosa claims that the alleged failure of BUMC and Nurse Thomas to set out in detail the bases for their objections constitutes waiver of those objections. We disagree.

Chapter 74 of the Texas Civil Practice and Remedies Code sets out the deadlines for objecting to the sufficiency of served experts' reports and for objecting to the qualifications of experts on standard of care and causation. Under "Procedural Provisions," with regard to challenging the sufficiency of an expert report, section 74.351(a) provides:

> Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.

With respect to challenging qualifications of an expert witness in a suit against a health care provider and the qualifications of an expert witness on causation in a health care liability claim, the statutes provide in pertinent part:

> A pretrial objection to the qualifications of a witness under this section must be made not later than the later of the 21st day after the date the objecting party receives a copy of the witness's curriculum vitae or the 21st day after the date of the witness's deposition.

*See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.402(f), 74.403(d) (Vernon 2005).

As to a person giving opinion testimony on whether a health care provider departed from accepted standards of health care, expert means an "expert qualified to testify under the requirements of Section 74.402." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5)(B). With respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the standard of care in any health care liability claim, expert means "a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5)(C). "Expert report" means:

> [A] written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6).

■ The record shows that within the 21–day deadline imposed by statute, BUMC and Nurse Thomas objected to the experts' reports (with curriculum vitaes) of Nurse Manning and Dr. Berg, as well as the deposition excerpts of Dr. Harrington (accompanied by the curriculum vitae in-

formation obtained from Dr. Harrington's internet website). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). With regard to Nurse Manning and Dr. Berg, BUMC and Nurse Thomas raised the objections to the tendered expert reports "that the qualifications and the expert report[s] do not meet the required elements of an expert report under 74.351," citing sections 74.351(r)(5) and (6). BUMC and Nurse Thomas further filed objections to the sufficiency of the reports under § 74.351(a), stating they are not valid reports under the statute. As to Dr. Harrington, BUMC and Nurse Thomas filed objection to the qualifications of Dr. Harrington and objected that the deposition excerpts do not constitute an expert report under section 74.351(r)(6), therefore objecting "to the sufficiency of the report under § 74.351(a)."

Thus, BUMC and Nurse Thomas timely raised objections to the qualifications of Nurse Manning, Dr. Berg, and Dr. Harrington. BUMC and Nurse Thomas further timely objected to the sufficiency of the experts' reports and deposition excerpts served by Rosa. In their later filed motion to dismiss, BUMC and Nurse Thomas elaborated on the specific arguments concerning the statutory objections raised. Therefore we do not agree that BUMC and Nurse Thomas failed to preserve the timely objections by not including specific details with the statutory objections raised.

### Medical Liability Expert Reports

■ An appellate court reviews a trial judge's decision on a motion to dismiss a claim under section 74.351 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *See Jernigan v. Langley,* 195 S.W.3d 91, 93 (Tex.2006) (per curiam) (discussing former article 4590i); *Am. Transitional Care Ctrs. of Tex. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001) (discussing former article 4590i); *Simonson v. Keppard,* 225 S.W.3d 868, 871 (Tex. App.-Dallas 2007, no pet.).

■ A trial judge abuses his discretion if he acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *See Gray v. CHCA Bayshore L.P.,* 189 S.W.3d 855, 858 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (citing *Garcia v. Martinez,* 988 S.W.2d 219, 222 (Tex.1999)). When reviewing matters committed to the trial judge's discretion, an appellate court may not substitute its judgment for that of the trial judge. *See Gray,* 189 S.W.3d at 858 (citing *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding)). A trial judge does not abuse his discretion merely because he decides a discretionary matter differently than an appellate court would under similar circumstances. *See Gray,* 189 S.W.3d at 858 (citing *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985)). However, a trial judge has no discretion in determining what the law is or in applying the law to the facts. *See Walker,* 827 S.W.2d at 840. A clear failure by the trial judge to analyze or apply the law correctly will constitute an abuse of discretion. *Walker,* 827 S.W.2d at 840.

■ An expert report under section 74.351(r) of the Texas Civil Practices and Remedies Code must provide enough information to fulfill two purposes if it is to constitute an objective good faith effort. The report must inform the defendant of the specific conduct the plaintiff has called into question and must provide a basis for the trial judge to conclude the claims have merit. *See Palacios,* 46 S.W.3d at 879; *Gray,* 189 S.W.3d at 859.

An expert report must provide a fair summary of the expert's opinions as of the date of the report regarding the applicable standard of care, the manner in which the

care rendered by the physician failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(6). The statute does not require that a single expert address all liability and causation issues with respect to a health care provider. Section 74.351(r) provides:

Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(i). *See HealthSouth Corp.*, 228 S.W.3d at 907 (that expert report fails to address causation does not render it otherwise incompetent or insufficient).

 A report cannot merely state the expert's conclusions as to the standard of care, breach, and causation. *See Palacios*, 46 S.W.3d at 879; *Hansen v. Starr*, 123 S.W.3d 13, 20 (Tex.App.-Dallas 2003, pet. denied); *Garcia v. Marichalar*, 198 S.W.3d 250, 254 (Tex.App.-San Antonio 2006, no pet.); *Gray*, 189 S.W.3d at 859. The expert must explain the basis for his statements and must link his conclusions to the facts. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex.2002); *Garcia*, 198 S.W.3d at 254; *Gray*, 189 S.W.3d at 859. A trial judge may not draw any inferences. *See Palacios*, 46 S.W.3d at 879; *Gray*, 189 S.W.3d at 859. Instead,

the trial judge must rely exclusively on the information contained within the four corners of the report. *See Palacios*, 46 S.W.3d at 879; *Gray*, 189 S.W.3d at 859. The expert report does not need to marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *See Ehrlich v. Miles*, 144 S.W.3d 620, 626 (Tex. App.-Fort Worth 2004, pet denied). The expert report may be informal and the information presented need not meet the same requirements as evidence offered in summary judgment proceedings or in a trial. *See Ehrlich*, 144 S.W.3d at 626. Also, it is the substance of the opinions, not the technical words used, that constitutes compliance with the statute. *See Ehrlich*, 144 S.W.3d at 626–27.

BUMC and Nurse Thomas challenge the sufficiency of the expert reports of Nurse Manning and Dr. Berg. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(*l*). They also challenge the qualifications of Nurse Manning to render opinions on standard of care and Dr. Berg to render opinions on causation. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.402(f), 74.403(d). After reviewing the record, we cannot agree.

 Nurse Manning, a certified critical care nurse, holds a master of science degree in nursing. In addition to teaching nursing students, she has practiced as a registered nurse since 1983, with experience in caring for post-operative patients who have doctors' orders for cold therapy for a part of the body. Through her experience, education and training, she is familiar with the nursing standards of care applicable in this matter and to render opinions regarding the manner in which the nursing standard of care was allegedly breached by Nurse Thomas.

 Dr. Berg, with twenty-five years practice in ophthalmology and board certi-

fications in ophthalmology and eye surgery, states:

> ... I have been involved with treating eye conditions concerning the effects of surgery on or around the eyes, involving reasons and means for controlling swelling in or around the eyes pre and postoperatively, and their effects on vision. I have performed or been involved in treating over 40,000 surgical cases, and of those, over 500 involve similar issues concerning eye pressure(s) after surgery. I have been directly involved with these cases where pressure on the eye or about the eye, if not treated properly, can lead to loss of vision as it did in this case.

We conclude that Nurse Manning's qualifications as set forth sufficiently qualify her to opine on the nursing standard of care and the alleged breach of the standard of care, and Dr. Berg's qualifications as set forth sufficiently qualify him to opine on causation.

Nurse Manning's report includes the following with regard to the standard of care and her opinion that Nurse Thomas breached the nursing standard of care:

> There was not an order in the chart which indicates to secure the ice pack in any manner.... Promoting and maintaining a safe environment involves ensuring that all equipment and treatments are appropriately applied.... The registered nurse has an obligation to ensure that the application of an ice pack is as the physician has ordered. Applying an ice pack or any other treatment or equipment inappropriately could cause harm to the client....
>
> The physician is responsible for directing medical treatment such as the application of an ice pack to a body part. Before a deviation from the physician order occurs, such as securing the ice pack with a strap, the nurse must con-

tact the physician to ensure this is appropriate method of application....

> The nursing staff at Baylor University Medical Center including Nurse Thomas, RN, should not have placed a strap without an order or should have called to clarify that a strap could be used to secure the ice pack over Ms. Rosa's eye before placing the strap on the ice pack.... Nurse Thomas should not have applied the strap without an order or she should have called to clarify the need for a method to secure the ice pack prior to placing the strap on the ice pack.

Dr. Berg's report contains the following regarding causation opinions:

> In this case, an ice pack was ordered to be applied on the eye and on the orbital tissue surrounding the eye to control postoperative swelling. This is the usual and customary protocol in cases of this nature. This is important, because if swelling is not controlled, it can lead to pressure upon the eye and damage to the inner structures of the eye, the retina, and optic nerve.... The issue in this case, is the excessive pressure placed onto the eye, which was caused by the Velcro strap that pushed the ice pack tightly against the globe-eye, after Diana Rosa's orbital decompression surgery ..., therefore, transmitting pressure throughout the eye. This increase in eye pressure caused decreased blood flow to both the retina and optic nerve of the eye, to the point that any tissue relying on blood supply would be permanently damaged.... [D]r. Harrington found the ice pack had been strapped onto Mrs. Rosa with a Velcro strap and [Dr. Harrington] immediately removed the strap and found no light perception, which established a direct case [sic] and effect in the Velcro strap and the ice pack leading to the loss of sight. Dr.

Harrington noted in the Baylor records that it appeared Mrs. Rosa's loss of vision was due to pressure on the eye due to the ice pack being strapped on the eye with a Velcro strap without any order from him to use the Velcro strap. I believe that Dr. Harrington followed the usual protocol to control postoperative swelling with an ice pack. Unfortunately for Mrs. Rosa, the Velcro was applied over the ice pack, leading to complete loss of sight in her right eye. ... I believe that the causative agent in the loss of vision of Mrs. Rosa's right eye was due to the Velcro strap attached to the ice pack that was placed over her right eye after surgery. This led to excessive pressure, which deprived the retina and the optic nerve of oxygen, leading to permanent loss of sight. I could find no other plausible cause other than the pressure that the Velcro strap transmitted through the ice pack to the eye that would lead to her loss of vision.

■ Through these reports, the experts have addressed how Nurse Thomas's conduct has been called into question, as well as the causal relationship between Nurse Thomas's alleged error and Rosa's loss of sight. The reports provide a sufficient basis for the trial judge to conclude that Rosa's claims against Nurse Thomas have merit. We conclude that Nurse Manning's and Dr. Berg's reports represent objective good faith efforts to comply with the definition of an expert report. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6). Therefore, we conclude the trial judge did not abuse his discretion in overruling BUMC's and Nurse Thomas's objections to Rosa's reports of Nurse Manning and Dr. Berg or in denying BUMC and Nurse Thomas's motion to dismiss. We overrule BUMC and Nurse Thomas's first issue.

In light of our disposition of the first issue, we need not address whether the deposition excerpts of Dr. Harrington satisfy the requirements of a statutory expert report. *See* Tex.R.App. P. 47.1.

We affirm the trial judge's order overruling BUMC and Nurse Thomas's objections to Rosa's experts' reports and denying BUMC and Nurse Thomas's motion to dismiss.