NO.
12-07-00276-CV

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

STUART SPITZER, M.D.,   §                      APPEAL FROM THE 392ND

APPELLANT

 

V.        

 

MADELON BERRY, INDIVIDUALLY      §                      JUDICIAL
DISTRICT COURT OF

AND AS PERSONAL
REPRESENTATIVE/

ADMINISTRATOR/EXECUTOR
OF

THE ESTATE OF TOMMY
BERRY,

APPELLEE   §                      HENDERSON
COUNTY, TEXAS

                                                                                                                                      
                     

OPINION

            Stuart
Spitzer, M.D., appeals the trial court’s order denying Spitzer’s motion to
dismiss a medical malpractice lawsuit filed against him by Madelon Berry.  In his sole issue, Spitzer argues that the
trial court erred in denying his motion to dismiss.  We affirm.

 

Background[1]








            Berry brought her lawsuit against Spitzer in both her
individual capacity and on behalf of the estate of Tommy Berry, her late
husband.  On June 9, 2004, the decedent
underwent colonostomy reversal and hernia repair operations performed by Spitzer.  After surgery, Spitzer placed the decedent on
an antibiotics regime, which was discontinued on June 22, 2004.  Spitzer placed the decedent on a second
antibiotics regime on June 26, 2004.  On
July 2, 2004, the decedent was transferred to another hospital and diagnosed
with sepsis.  The decedent died of
cardiopulmonary arrest on July 10, 2004.

            Berry
filed a medical malpractice lawsuit against Spitzer and subsequently served
Spitzer with a copy of an expert report written by Louis F. Silverman, M.D., a
board certified general and thoracic surgeon practicing in Houston, Texas.  Spitzer objected to Silverman’s report and
filed a motion to dismiss based on the allegation that the report failed to
meet the requirements of an expert report under section 74.351 of the Texas
Civil Practice and Remedies Code.  The
trial court denied Spitzer’s motion to dismiss. 
This appeal followed.

 

Expert
Report

            In
his sole issue, Spitzer argues that the trial court should have dismissed Berry’s
lawsuit against him, alleging that Berry failed to timely provide him with an
expert report meeting the requirements of section 74.351 of the Texas Civil
Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code Ann. §
74.351 (Vernon Supp. 2007).[2] 
More specifically, Spitzer alleges that Dr. Silverman’s report fails to
sufficiently set forth a standard of care, a breach of that standard, and a
causal link between a breach and the decedent’s death.

Standard of Review

            An
appellate court reviews a trial court’s decision on a section 74.351 motion to
dismiss for an abuse of discretion.  See
Baylor Univ. Med. Ctr. v. Rosa, 240 S.W.3d 565, 569 (Tex. App.–Dallas
2007, pet. filed) (applying prior supreme court precedent interpreting an
earlier statute).  The abuse of
discretion standard applies when a trial court has discretion either to grant
or deny relief based on its factual determinations.  In re Doe, 19 S.W.3d 249, 253
(Tex. 2000) (citing Bocquet v. Herring, 972 S.W.2d 19, 20-21
(Tex. 1998)).  A trial court abuses its
discretion when its decision is arbitrary, unreasonable, or without reference
to any guiding rules or legal principles. 
K-Mart Corp. v. Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000)
(citing Bocquet, 972 S.W.2d at 21).  “The mere fact that a trial judge may decide
a matter within his discretionary authority in a different manner than an
appellate judge in a similar circumstance does not demonstrate that an abuse of
discretion has occurred.”  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985).  However, “a trial court has no discretion in
determining what the law is or applying the law to the facts.”  In re Kuntz, 124 S.W.3d 179,
181 (Tex. 2003) (orig. proceeding); see also F.F.P. Operating Partners,
L.P. v. Duenez, 237 S.W.3d 680, 694 (Tex. 2007) (“[F]ailing to
correctly apply the law is an abuse of discretion.”).  

Failure to Serve a Section 74.351
Report

            Texas
Civil Practice and Remedies Code section 74.351 provides that, within 120 days
of suit, a plaintiff must serve expert reports for each physician or health
care provider against whom a liability claim is asserted.  Ogletree v. Matthews, No.
06-0502, 2007 Tex. LEXIS 1028, at *6 (Tex. Nov. 30, 2007) (citing
Tex. Civ. Prac. & Rem. Code Ann. §
74.351(a)).  These reports must identify
the “applicable standards of care, the manner in which the care rendered by the
physician or health care provider failed to meet the standards, and the causal
relationship between that failure and the injury, harm, or damages claimed.”  Ogletree, 2007 Tex. LEXIS 1028,
at *6 (quoting Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(r)(6)). 
If a plaintiff does not serve a timely report,  a trial court shall grant the defendant’s
motion to dismiss the case with prejudice. 
Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(b); Ogletree, 2007 Tex. LEXIS 1028, at
*6-7.  An order that denies all or part
of the relief sought in such a motion may be immediately appealed.  Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (Vernon Supp. 2007)
(authorizing interlocutory appeal from order that “denies all or part of the
relief sought by a motion under Section 74.351(b)”); Ogletree,
2007 Tex. LEXIS 1028, at *7. 

Sufficient and Deficient Expert
Reports

            Section
74.351 defines an expert report as follows:








 

“Expert report” means a written
report by an expert that provides a fair summary of the expert’s opinions as of
the date of the report regarding applicable standards of care, the manner in
which the care rendered by the physician or health care provider failed to meet
the standards, and the causal relationship between that failure and the injury,
harm, or damages claimed.

 

 








Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(r)(6).  Where a report is
sufficient, the trial court must deny the defendant’s motion to dismiss and
allow the plaintiff’s claims to proceed. 
See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351.  A sufficient
report is one that contains a “fair summary” of the standard of care, how that
standard was breached, and how that breach caused the injury in question.  Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).  A “fair summary” is “something less than a
full statement” of the applicable standard of care, how it was breached, and
how that breach caused the injury.  See
Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d
873, 880 (Tex. 2001) (interpreting an earlier statute).  Nonetheless, “a fair summary must set out
what care was expected, but not given” and how that caused the injury.  See id.  “The expert report need not marshal every bit
of the plaintiff’s evidence.” See Jernigan v. Langley, 195 S.W.3d
91, 93 (Tex. 2006) (interpreting an earlier statute).  And a report’s adequacy does not depend on
whether the expert uses any particular “magic words.”  See Bowie Mem’l Hosp. v. Wright, 79
S.W.3d 48, 53 (Tex. 2002) (also interpreting an earlier statute).  But a “fair summary” is not a conclusory summary.
 See id. 

            As
noted by the supreme court, when a report is deemed not served because it is
deficient, the trial court retains discretion to grant a thirty day extension
to cure the deficiency.  Ogletree,
2007 Tex. LEXIS 1028, at *10 (citing Tex.
Civ. Prac. & Rem. Code Ann. § 74.351(c)).  In the context of deficient reports, section
74.351 mandates that “[a] court shall grant a motion challenging the adequacy
of an expert report only if it appears to the court, after hearing, that the
report does not represent an objective good faith effort to comply with the
definition of an expert report [as set forth by section 74.351].” Tex. Civ. Prac. & Rem. Code Ann. §
74.351(l).  Where a report is deficient,
but one that still “represent[s] an objective good faith effort,” it is
something less than a sufficient expert report, see Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c),
but something more than mere conclusory allegations.  See Palacios, 46 S.W.3d at 879.

            Addressing
a previous, but similarly worded, version of the statute in question, the
supreme court has explained that, 








 

[t]o constitute a “good-faith
effort,” the report must provide enough information to fulfill two purposes:
(1) it must inform the defendant of the specific conduct the plaintiff has
called into question, and (2) it must provide a basis for the trial court to
conclude that the claims have merit.

 

 








Wright, 79 S.W.3d at 52 (citing Palacios,
46 S.W.3d at 879).  An expert report that
is both deficient and still a “good faith effort” “need not marshal all the
plaintiff’s proof, but it must include the expert’s opinion on each of the
three elements that the [statute] identifies: standard of care, breach, and
causal relationship.”  See Wright,
79 S.W.3d at 52 (citing Palacios, 46 S.W.3d at 878).  A report that is a “good faith effort” “cannot
merely state the expert’s conclusions about these elements.”  See Wright, 79 S.W.3d at 52
(citing Palacios, 46 S.W.3d at 879).  “[R]ather, the expert must explain the basis
of his statements to link his conclusions to the facts.”  See Wright, 79 S.W.3d at 52
(citing Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex. 1999)).  Because the statute focuses on what the
report discusses, the only information relevant to a consideration of a report’s
sufficiency and “good faith” nature “is within the four corners of the
document.”  See Palacios,
46 S.W.3d at 878; see also Jernigan, 195 S.W.3d at 93; Wright,
79 S.W.3d at 52.

Discussion

            Dr.
Silverman’s report reads in pertinent part:








 

[The decedent] . .
. underwent [various surgical procedures] on June 9, 2004, at East Texas
Medical Center in Athens [performed] by Dr. Stuart Spitzer.  His postoperative course was complicated by
impaired respiratory function, a result of his known chronic obstructive
pulmonary disease. . . . [A]ntibiotic therapy was initiated on June 9, 2004,
the day of his initial operation.  His
respiratory status worsened, and on June 14, he was started on [a steroid
regime].  On June 16, 2004, intestinal
obstruction was diagnosed and [another surgical procedure was] carried out by
Dr. Spitzer.  His postoperative course
remained stormy and primarily was manifested as respiratory and cardiopulmonary
problems.  On June 22, 2004, . . .
antibiotic therapy was terminated and . . . steroid therapy continued.  On June 26, 2004, antibiotic therapy was
resumed . . . .  His condition remained
relatively stable, [although] his respiratory status remained worrisome, and he
was transferred . . . to East Texas Medical Center Specialty Hospital on July
2, 2004, for ongoing respiratory care. . . . [O]n admission to East Texas
Medical Center Specialty Hospital, for the first time, wound drainage was
noted. . . . Despite vigorous therapy . . . sepsis progressed. . . . He
succumbed to sepsis, going into irreversible cardiopulmonary arrest.

 

The standard of
care for patients at risk of postoperative infection who are receiving steroid
therapy is to maintain appropriate antibiotic coverage.  Steroids are known to impair resistance to
infection.  [The decedent] underwent an
operative procedure, i.e., colon surgery, where the risk of infection is
significant.  He was further debilitated
by the need for a second operation to treat intestinal obstruction.  He required ongoing steroid therapy for treatment
of respiratory insufficiency.  His
antibiotic therapy was discontinued on June 22, 2004, and no antibiotic therapy
was given until June 26, 2004.  More
likely than not, this hiatus in antibiotic therapy allowed development and
progression of the infections that led to irreversible sepsis and death.  Had his antibiotic therapy been
maintained, more likely than not, the lethal infections would not have
developed and his death secondary to overwhelming sepsis not occurred.  Dr. Spitzer’s failure to maintain antibiotic
therapy under these circumstances is clearly below standard and was, in all
reasonable medical probability, a direct cause of [the decedent’s] demise.
(emphasis added)

 

 








            Spitzer
alleges that Dr. Silverman’s report fails to sufficiently set forth a standard
of care, a breach of that standard, and a causal link between a breach and the
decedent’s death.  As such, Spitzer
argues that the trial court should have dismissed Berry’s lawsuit against
him.  We disagree.    Dr.
Silverman’s report sets forth, in detail, the circumstances leading to the
decedent’s death and then sets forth the applicable standard of care, how that
standard was breached, and how that breach caused the decedent’s death.  According to the report, the applicable
standard of care was that “antibiotic therapy [should have] been maintained.”  The report states that “Dr. Spitzer’s failure
to maintain antibiotic therapy [was] clearly below standard” under the
circumstances of an individual who had undergone colon surgery, then a second
surgery, and whose resistance to infection was impaired by steroid
therapy.  As the report explains, “the
risk of infection is significant” where an individual has undergone colon
surgery.  Finally, the report explains
the causal relationship between that Spitzer’s failure to maintain antibiotic
therapy and the injury.  According to the
report, 








 

. . . this hiatus
in antibiotic therapy allowed development and progression of the infections
that led to irreversible sepsis and death. 
Had his antibiotic therapy been maintained  . . . , the lethal infections would not have
developed and his death secondary to overwhelming sepsis not occurred.  Dr. Spitzer’s failure to maintain antibiotic
therapy under these circumstances is clearly below standard and was, in all
reasonable medical probability, a direct cause of [the decedent's] demise. 

 

 








            This
report was not deficient under the statute. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6).  Consequently, the trial court did not abuse
its discretion by denying Spitzer’s motion to dismiss. See Honeycutt,
24 S.W.3d at 360.  Therefore, we overrule
Spitzer’s sole issue.  See Rosa,
240 S.W.3d at 569. 

 

Disposition

            We
affirm the trial court’s order denying Spitzer’s motion to
dismiss.

 

                                                                                                    BRIAN HOYLE   

                                                                                                               Justice

 

Opinion delivered February 22, 2008.

Panel consisted of Worthen, C.J., Griffith, J., and
Hoyle, J.

 

 

 

(PUBLISH)











[1]
The facts set forth below have been gleaned from the allegations contained
within Berry’s amended petition, Berry’s expert report, and Spitzer’s motion to
dismiss.  Our opinion should not be
construed as an evaluation of the veracity or merits of those allegations.





[2] Because it is unnecessary to do otherwise, we
have cited only the most current version of this statute in our opinion.