Affirmed and Memorandum Opinion filed July 22, 2008








Affirmed and Memorandum Opinion filed July 22, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00150-CV

____________

 

AHMAD MOUTASSEM RAJAR PACHA, M.D.,
INDIVIDUALLY AND D/B/A MOUTASSEM RAJAR PACHA, M.D., P.A., Appellant

 

V.

 

GRETCHEN CASEY, INDIVIDUALLY AND
A/N/F OF JOHN CONNER CASEY AND CULLEN PATRICK CASEY, MINOR SURVIVING CHILDREN
OF KEVIN JOHN CASEY; GRETCHEN CASEY, AS PERSONAL REPRESENTATIVE OF THE ESTATE
OF KEVIN JOHN CASEY; AND JOHN CASEY AND JOAN CASEY, AS SURVIVING PARENTS OF
KEVIN JOHN CASEY, Appellees

 



 

On Appeal from the 11th
District Court

Harris County, Texas

Trial Court Cause No. 2006-30392

 



 

M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, a gastroenterologist appeals
the trial court=s denial of his motion to dismiss
health-care-liability claims for plaintiffs= failure to file
an expert report in compliance with section 74.351 of the Texas Civil Practice
and Remedies Code.  We affirm.








I.  Factual and Procedural Background

Kevin John Casey (ACasey@), now deceased,
visited his family physician complaining of chest pain and dizziness.  Upon the
physician=s referral, Casey sought treatment the next day from
appellant, gastroenterologist Dr. Ahmad Moutassem Rajar Pacha.  Casey reported
that he had been experiencing indigestion for two years, persistent coughing,
and a Aburning@ sensation in his
chest that lasted for two weeks.  Dr. Pacha ordered chest x-rays, performed a
gastroscopy,[1]
and diagnosed Casey with hiatal hernia, stomach erosions, and erosive
gastritis.  Medical records indicate that before this procedure, Casey had an
elevated pulse rate and decreased oxygen saturation levels.  One day later,
Casey returned to his physician, complaining of chest pain.  Several days
later, Casey suffered a fatal heart attack. 

 Autopsy reports revealed that the cause of Casey=s death was
cardiovascular heart disease with congestive heart failure and that evidence
existed of multiple acute (less than two weeks old), recent (two to six weeks
old), and remote (more than six weeks old) myocardial infarcts.[2] 
Casey=s family and
estate filed a health-care-liability claim against Dr. Pacha individually and
against his professional association (hereinafter collectively ADr. Pacha@) seeking to
recover damages for Dr. Pacha=s alleged negligence and for failing to
meet the applicable standards of medical care by failing to recognize,
diagnose, or properly treat Casey=s cardiovascular
symptoms and disease.  Appellees include Casey=s wife,
individually, as next friend to Casey=s minor, surviving
children, and as personal representative to Casey=s estate, and
Casey=s parents
(collectively Athe Caseys@).








In attempting to comply with section 74.351 of the Texas
Civil Practice and Remedies Code, the Caseys designated Dr. Steven Kanner, an
internist, as an expert witness who provided a written expert report and his
curriculum vitae.  Dr. Pacha moved to dismiss the Caseys= suit, claiming
the expert report was insufficient because Dr. Kanner was not qualified to
provide opinions regarding standard of care and causation, and because Dr.
Kanner=s opinions were
conclusory and speculative.  The trial court denied the motion to dismiss, but
found that the report did not meet all of the requirements of Chapter 74 of the
Texas Civil Practice and Remedies Code, also known as the Medical Liability
Act.  The trial court granted a thirty-day period to remedy the deficiencies in
accordance with the Medical Liability Act.  The Caseys filed a supplemental
report from Dr. Kanner and a new report from cardiologist Dr. Barry Silverman. 
Dr. Pacha challenged these reports on the basis that the reports did not show
that the witnesses were qualified to provide opinions for the standard of care
or proximate cause and that the reports contained conclusory assertions on the
standards of care.  The trial court denied Dr. Pacha=s motion to
dismiss.

II.  Standard of Review








Dr. Pacha brings this interlocutory appeal challenging the
trial court=s order denying his motion to dismiss.  We review a
trial court=s determination that an expert witness is qualified
under an abuse-of-discretion standard.  See Broders v. Heise, 924 S.W.2d
148, 151B52 (Tex. 1996). 
We also apply this same standard when reviewing a trial court=s decision
regarding the adequacy of an expert report.  See Am. Transitional Care Ctrs.
of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001).  The Caseys, as
the proponents of the experts, have the burden to show that the experts are
qualified.  See Broders, 924 S.W.2d at 151.  The trial court abuses its
discretion if it acts arbitrarily, unreasonably, or without reference to
guiding rules or principles.  See id.; Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985). 
An abuse of discretion does not occur merely because the appellate court may
have decided a discretionary matter in a different way than the trial court.  Downer,
701 S.W.2d at 242.

III.  Analysis

A.      Did the trial court abuse
its discretion in denying the doctor=s motion to dismiss based on the doctor=s objection to the qualifications
of the plaintiffs= expert witnesses in providing
expert opinions on the standard of care and proximate causation?

In Dr. Pacha=s first two
issues, he complains the trial court abused its discretion in denying his
request to dismiss the Caseys= claims under section 74.351 because, he
claims, the Caseys failed to demonstrate that Dr. Kanner and Dr. Silverman were
qualified to render expert opinions on standard of care and causation.[3] 
Under section 74.351 of the Texas Civil Practice and Remedies Code, a claimant,
not later than the 120th day after the date a health-care-liability claim is
filed, must serve on each party one or more expert witness reports addressing
liability and causation.  Tex. Civ.
Prac. & Rem. Code Ann. '' 74.351(a), (j)
(Vernon 2005); Lewis v. Funderburk, 253 S.W.3d 204, 205 (Tex. 2008).








To qualify as an expert witness who may render a report in
a suit against a physician, the physician preparing the report must be
qualified to offer an opinion regarding the standard of care by meeting the
requirements of section 74.401 by (1) practicing medicine at the time testimony
was given or when the claim arose; (2) having knowledge of the accepted
standard of medical care for the diagnosis, care, or treatment of the illness,
injury, or condition involved in the claim; and (3) having training or
experience in order to offer an expert opinion regarding those accepted
standards of medical care.  Tex.
Civ. Prac. & Rem. Code Ann. '' 74.401(a),
74.351(r)(5)(A) (Vernon 2005); McKowen v. Ragston, No. 01-06-00665-CV,
2007 WL 79330, at *3 (Tex. App.CHouston [1st Dist.] Jan. 11, 2007, no
pet.).  To determine whether an expert=s training or
experience yields sufficient qualifications to offer an expert opinion
regarding those accepted standards of medical care, we consider whether the
expert is (1) board certified or has other substantial training or experience
in the area of medical practice relevant to the claim and (2) actively
practicing medicine in rendering medical care services relevant to the claim.[4] 
Tex. Civ. Prac. & Rem. Code Ann.
' 74.401(c); see
McKowen, 2007 WL 79330, at *3; Mem=l Hermann
Healthcare Sys. v. Burrell, 230 S.W.3d 755, 759 (Tex. App.CHouston [14th
Dist.] 2007, no pet.) (reviewing the same factors with regard to a claim
against a health care provider).  Subject to exceptions not applicable to this
case, section 74.403 requires that:

in a suit involving a health care liability claim against a physician
or health care provider, a person may qualify as an expert witness on the issue
of the causal relationship between the alleged departure from accepted
standards of care and the injury, harm, or damages claimed only if the person
is a physician and is otherwise qualified to render opinions on that causal
relationship under the Texas Rules of Evidence.

Tex. Civ. Prac. & Rem. Code Ann. ' 74.403(a) (Vernon
2005).  The party offering the witness as an expert must establish that the
witness is qualified to testify under Rule 702 by demonstrating the witness has
expertise concerning the actual subject matter for which the party is offering an
opinion.  See Mem=l Hermann
Healthcare Sys., 230 S.W.3d at 762.  

AAphysician@ is defined as a
person who is:

(1) licensed to practice medicine in one or more states in the United
States; or 

(2) a graduate of a medical school accredited by the Liaison Committee
on Medical Education or the American Osteopathic Association only if testifying
as a defendant and that testimony relates to that defendant=s standard of care, the alleged
departure from that standard of care, or the causal relationship between the
alleged departure from that standard of care and the injury, harm, or damages
claimed.








Tex. Civ. Prac. & Rem. Code Ann. ' 74.401(g).  Thus,
at a minimum, to render an expert report as to standard of care or causation,
Drs. Kanner and Silverman must be licensed to practice medicine in one or more
states in the United States.  See id.; see also id. '' 74.403(a),
74.401(a).  The qualifications of the expert necessary to fulfill the criteria
of an expert report as defined in section 74.351 must be found within the four
corners of the expert report itself and the expert=s curriculum
vitae.  Palacios, 46 S.W.3d at 878; see Mem=l Hermann
Healthcare Sys., 230 S.W.3d at 758.

Dr. Kanner=s Qualifications

Dr. Kanner=s supplemental report and curriculum vitae
reflect that he is a board-certified physician specializing in internal
medicine and licensed in four states.  See Tex. Civ. Prac. & Rem. Code Ann. '' 74.401(g), 74.401(c)(1). 
He has practiced medicine for over twenty-five years, currently treating
patients weekly, and he has treated hundreds of cardiology and gastroenterology
patients.  See id. '' 74.401(a), (c)(2).  In addition to
teaching medical students through his position with a medical school and at
Columbia Hospital, he treats cardiac patients on a daily basis and regularly
treats patients in the throes of a heart attack.  See id. '' 74.401(a), (c)(1). 
Based on his training as an internist and through practical experience, Dr.
Kanner explained his knowledge and familiarity with the standard for cardiac
care as presented in the Caseys= claim.  See id. '' 74.401(a),
(c)(2).  These qualifications, under the plain language of the applicable
statute, are sufficient for Dr. Kanner to qualify as an expert witness who may
render an expert report and offer an expert opinion based on his knowledge of
the accepted standard of medical care for the diagnosis, care, or treatment of
cardiac conditions as involved in this claim.  See Tex. Civ. Prac. & Rem. Code Ann. '' 74.401(a), (g); Baylor
Univ. Med. Ctr. v. Rosa, 240 S.W.3d 565, 572 (Tex. App.CDallas 2007, pet.
filed); Mem=l Hermann Healthcare Sys., 230 S.W.3d at
760B62.








Dr. Kanner explained that internists and those specializing
in subspecialties such as gastroenterology must be aware of multiple causes of
chest pain besides gastrointestinal pain and that a major cause of chest pain
is underlying coronary artery disease.  According to Dr. Kanner, such a
standard is applicable to any physician treating a patient with chest pain and
burning sensations and the standards are basic to the general practice of
medicine.  Dr. Kanner stated in his affidavit that he is aware of the standard
of care and protocol for treatment of patients presenting with Casey=s conditions.  See
Tex. Civ. Prac. & Rem. Code Ann.
'' 74.401(a), (c). 
Likewise, he indicated that admittance to a hospital to receive an angiogram is
the appropriate standard for a patient presenting with cardiovascular disease
like Casey=s; this procedure would have located the area of
pathology and led to open-heart surgery or coronary artery balloon
angioplasty.  Dr. Kanner knows and teaches the standard of care not only as a
physician, but as an internist who has practical knowledge and training in the
fields of cardiology and gastroenterology. 








Dr. Kanner opined that Dr. Pacha should have ruled out
cardiac etiology[5]
and ordered adequate testing, including electrocardiograms both in the office
and prior to endoscopy.[6] 
Dr. Kanner described Dr. Pacha=s breach of the standard of care as his
failure to adequately question or properly examine Casey=s history of chest
pain and burning sensations in the chest, as documented in his medical
records.  According to Dr. Kanner, given Casey=s symptoms of
chest pain and burning, Dr. Pacha, as an internist specializing in
gastroenterology, should have recognized, investigated, and ruled out symptoms
of cardiovascular disease with congestive heart failure, which Dr. Kanner
explained Dr. Pacha failed to do.  Having reviewed Dr. Pacha=s medical chart
and the autopsy report of Casey, Dr. Kanner opined that had Dr. Pacha complied
with the applicable standard of care, Casey would have been admitted to a
hospital to receive intravenous diuretics to reduce overload around Casey=s heart and
lungs.  According to Dr. Kanner=s experiences and practical knowledge, Dr.
Pacha=s failure to
consider, investigate, and treat Casey=s classic cardiac
warning symptoms caused Casey=s death.  The expert report provides the
basis for Dr. Kanner=s knowledge, training, and practical
experience in treating cardiac patients and contains an opinion as to the
appropriate standard of care, how Dr. Pacha=s conduct
specifically departed from the standard, as well as the causal relationship
between Dr. Pacha=s alleged errors and Casey=s death.  Under
the plain language of the statutes, Dr. Kanner is qualified to render an expert
opinion regarding causation.  See Tex.
Civ. Prac. & Rem. Code Ann. '' 74.403(a),
74.401(g), 74.351(r)(6); Rosa, 240 S.W.3d at 572; Mem=l Hermann
Healthcare Sys., 230 S.W.3d at 762.

Dr. Silverman=s Qualifications








Similarly, Dr. Silverman=s expert report
and curriculum vitae indicate that he is board-certified in cardiology and
licensed to practice in Georgia.  See Tex.
Civ. Prac. & Rem. Code Ann. '' 74.401(g), 74.401(c)(1). 
In addition to teaching at Emory University, Dr. Silverman practices
cardiology, a field of medicine which is relevant to the Caseys= claim.  See
id. '' 74.401(a), (c).  Based on his knowledge,
training, and experience, and after reviewing the pertinent medical records,
Dr. Silverman claimed knowledge and familiarity with the standard of care
regarding treatment of those patients presenting cardiovascular disease.  See
id. '' 74.401(a),
(c)(1).  Under the plain language of the applicable statute, Dr. Silverman=s qualifications
are sufficient for him qualify as an expert witness who may render an expert
report and offer an expert opinion based on knowledge of the accepted standard
of medical care for the diagnosis, care, or treatment of Casey=s cardiac
condition as involved in this claim.  See Tex. Civ. Prac. & Rem. Code Ann. '' 74.401(a), (g); Rosa,
240 S.W.3d at 572; Mem=l Hermann
Healthcare Sys., 230 S.W.3d at 760B62.

Dr. Silverman is familiar with the standard of cardiac care
and claims knowledge of the appropriate standard of care for a patient
presenting cardiovascular disease with congestive heart failure such as Casey=s.  Dr. Silverman
indicated that Dr. Pacha=s treatment of Casey fell below the
recognized standard of care in recognizing, investigating, and treating Casey=s cardiac symptoms
by the following acts:

$                  
Dr. Pacha
should have recognized and investigated the symptoms of cardiovascular disease
with congestive heart failure given Casey=s complaints of chest pain and burning sensation in his
chest.

$                  
In conducting a
physical, Dr. Pacha was deficient in not recognizing the presence of congestive
heart failure and not recording Casey=s blood pressure or heart rate.

$                  
Dr. Pacha
should have conducted an EKG (electrocardiogram) before the endoscopy, given
Casey=s symptoms, signs, and risk
factors.

$                  
Dr. Pacha was
deficient in not carefully examining Casey before and after the endoscopy to
explain Casey=s tachycardia.[7]








According to Dr. Silverman, had Dr. Pacha complied with the
requisite standard of care, Casey would have been admitted to the hospital for
intravenous diuretic treatment and would have had an angiogram to locate the
areas of cardiac pathology and a coronary artery balloon angioplasty or
open-heart surgery.  According to Dr. Silverman, Dr. Pacha=s negligence in
failing to treat Casey=s cardiovascular disease was the proximate
cause of Casey=s death.  Dr. Silverman=s expert report
sets forth his knowledge, training, and experience and provides an opinion as
to the appropriate standard of care, Dr. Pacha=s specific
departure from that standard, and causation linking Dr. Pacha=s alleged errors
to Casey=s death.  Under
the plain language of the statutes, Dr. Silverman is qualified to render an
expert opinion regarding causation.  See Tex. Civ. Prac. & Rem. Code Ann. '' 74.403(a),
74.401(g), 74.351(r)(6); Rosa, 240 S.W.3d at 572; Mem=l Hermann
Healthcare Sys., 230 S.W.3d at 762.

Dr. Pacha argues Drs. Kanner and Silverman are not
gastroenterologists and the reports do not indicate that they observed
gastroenterologists examining a patient with burning sensations in the chest. 
Therefore, Dr. Pacha asserts that these doctors are not qualified to render
expert opinions concerning the standard of care for a gastroenterologist.  As
part of this argument, Dr. Pacha claims that each of the proffered experts, Dr.
Kanner and Dr. Silverman, must demonstrate his experience in ordering and performing
angiograms, balloon angioplasties, or open-heart surgery.

Under subsection 74.401(a) only a physician may opine as an
expert against another physician.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 74.401(a); see
also id. ' 74.401(g).  Not every physician is a qualified
expert.  See Broders, 924 S.W.2d at 152.  However, when a subject matter
is common to and equally recognized in all fields of practice, then any
physician familiar with the subject may testify to the standard of care.  Blan
v. Ali, 7 S.W.3d 741, 745B46 (Tex. App.CHouston [14th
Dist.] 1999, no pet.).  Similarly, when a subject of inquiry is substantially
developed in multiple fields of practice, a physician in any one of the fields
may opine as to the standard of care for that procedure in another field.  Broders,
924 S.W.2d at 152.








In determining expert qualifications for the standard of
care, we examine whether the expert  has knowledge of the specific condition
involved in the claim and we do not focus on the physician=s area of
expertise.  Blan, 7 S.W.3d at 746.  The claim at issue in this case is
recognizing and investigating cardiovascular disease when confronted with
symptoms of chest pain and burning sensation.[8] 
See id.  Certain standards of care apply to multiple schools of practice
and any medical doctor.  Id.  In this case, Dr. Kanner=s report describes
that a gastroenterologist is a subspecialty of internal medicine, of which Dr.
Kanner is an internist and Dr. Pacha is an internist with a subspecialty of
gastroenterology.  Although, Dr. Kanner=s experience stems
from treating cardiac patients regularly, his report indicates that the
standards in treating cardiac symptoms are basic to the general practice of
medicine and apply to any physician treating a patient with chest pain and
burning sensations.  See id.  Likewise, Dr. Silverman=s report provides
the appropriate standard of care for any patient presenting cardiovascular
disease with congestive heart failure, though his experience stems from his
cardiology practice.  Though Drs. Kanner and Silverman are not
gastroenterologists, each expert report provides sufficient evidence of the
expert=s knowledge,
training, and experience in connection with recognizing, diagnosing, and
treating cardiovascular symptoms in patients such as Casey in this claim.  See
id. at 745.  We conclude that the trial court did not abuse its discretion
in finding that Drs. Kanner and Silverman demonstrated sufficient
qualifications to opine about the standards of care in connection with
recognizing, investigating, and treating or ruling out cardiovascular disease
in treating Casey, whose symptoms involved chest pain and burning sensations
within his chest.  See id. at 747; McKowen, 2007 WL 79330, at *10. 
We also conclude that the trial court did not abuse its discretion by finding
that Drs. Kanner and Silverman are qualified to opine as experts on Dr. Pacha=s standard of care
in treating Casey and in the causation between Dr. Pacha=s alleged
departure from the standard of care and Casey=s death.  See
Rosa, 240 S.W.3d at 572; Mem=l Hermann
Healthcare Sys., 230 S.W.3d at 762; McKowen, 2007 WL 79330, at *10;
see also Blan, 7 S.W.3d at 745.  We overrule Dr. Pacha=s first and second
issues.

 








B.      Did the trial court abuse
its discretion in denying the doctor=s motion to dismiss based on the objections to the
sufficiency of the plaintiffs= expert reports that the expert reports were
conclusory and offered speculative opinions contrary to medical evidence
regarding the standard of care?

In his third issue, Dr. Pacha claims the trial court erred
in denying his motion to dismiss challenging the sufficiency of the expert
reports of Drs. Kanner and Silverman under section 74.351 because Dr. Pacha
contends the reports offered conclusory and speculative opinions contrary to
medical evidence regarding the standard of care.

In accordance with section 74.351(l), a trial court should
grant a motion challenging the adequacy of an expert report if the report is
not an objective, good-faith effort to comply with the definition of an expert
report provided in subsection (r)(6).  Tex.
Civ. Prac. & Rem. Code Ann. '' 74.351(l),
74.351(r)(6).  Subsection 74.351(r)(6) defines Aexpert report@ as:

a written report by an expert that provides a fair summary of the
expert=s opinions as of the date of the
report regarding applicable standards of care, the manner in which the care
rendered by the physician or health care provider failed to meet the standards,
and the causal relationship between that failure and the injury, harm, or
damages claimed.

Id. ' 74.351(r)(6). 
The trial court=s inquiry is limited to the four corners
of the report.  Palacios, 46 S.W.3d at 878.  A Agood-faith@ effort requires
that the report contain a discussion of  the standard of care, breach, and
causation with sufficient specificity to inform the defendant of the conduct
the plaintiff has called into question and to provide a basis for the trial
court to conclude that the claims have merit.  Id. at 875.








A[T]o avoid dismissal, a plaintiff need not
present evidence in the report as if it were actually litigating the merits. 
The report can be informal in that the information in the report does not have
to meet the same requirements as the evidence offered in a summary-judgment
proceeding or at trial.@  Id. at 879.  Omission of any of
the statutory elements prevents the report from being a good-faith effort.  Id. 
A report that merely states the expert=s conclusions
about the standard of care, breach, and causation does not meet the statutory
requirements.  Id.

A fair summary sets forth what care was expected but was
not given.  Id. at 880. Identifying whether the standard of care has
been breached cannot be determined absent specific information about what
should have been done differently.  Palacios, 46 S.W.3d at 880.  An
expert=s report must
contain information on the standard of care; it is not enough for a report to
contain conclusory insights about the Caseys= claims.  See
Bowie Mem=l Hosp. v. Wright, 79 S.W.3d 48, 52
(Tex. 2002).  Rather, the expert must explain the bases of the statements and
link any conclusions to the facts.  Id.; Patel v. Willams ex Rel.
Estate of Mitchell, 237 S.W.3d 901, 904 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).  An expert report must show causation beyond mere
conjecture.  Wright, 79 S.W.3d at 52.  

In his report, Dr. Kanner described the standard of care
for treating patients like Casey, who exhibit chest pain and experience burning
sensations, as recognizing and ruling out cardiac etiology, which is a major
cause of chest pain.  To exercise reasonable care, the physician would require
adequate testing, such as electrocardiograms both in the office and prior to
the endoscopy.  According to Dr. Kanner, Dr. Pacha inadequately investigated
the source of Casey=s chest pain by not properly examining and
questioning him regarding the origin of his chest pain and burning sensations. 
Dr. Kanner stated that Dr. Pacha should have recognized and investigated the
symptoms of cardiovascular disease because of Casey=s complaints of
chest pain and burning sensations within Casey=s chest. 
According to Dr. Kanner, Dr. Pacha=s failure to rule
out or investigate cardiac etiology caused Casey=s death, and Dr.
Pacha=s departure from
the standard of care applied to any physician treating a patient with chest
pain and burning sensations.








In his report, Dr. Silverman described the standard of care
for treatment of Casey, which included recognizing the presence of congestive
heart failure and recording blood pressure and heart rate.  He opined that,
given Casey=s symptoms, signs, and risk factors, an
electrocardiogram procedure should have been conducted before the endoscopy. 
Dr. Silverman indicated that the standard required Dr. Pacha=s careful
examination of Casey before and after the endoscopy to explain the
tachycardia.  Moreover, Dr. Silverman described Dr. Pacha=s failure to comply
with the standard for a patient presenting cardiovascular disease as being
negligent, which, he opined, proximately caused Casey=s death. 

Each of Drs. Kanner=s and Silverman=s reports
represent an objective, good-faith effort to comply with the definition of an
expert report provided in subsection (r)(6).  Tex.
Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6). 
Both reports discuss the standard of care, breach, and causation with
sufficient specificity to inform Dr. Pacha of the conduct the Caseys have
alleged and to provide a basis for the trial court to conclude that the claims
have merit.  Palacios, 46 S.W.3d at 875.  Both reports offer more than
conclusory statements about the standard of care, as each sets forth what
procedures were expected but were not performed.  See Palacios, 46
S.W.3d at 879, 880; Patel, 237 S.W.3d at 905.  Each report explains the
standard of care regarding patients presenting similar cardiac symptoms and
links Dr. Pacha=s alleged failure to recognize,
investigate, and rule out cardiac symptoms as a breach of the standard,
resulting in Casey=s death.  Wright, 79 S.W.3d at 52; Patel,
237 S.W.3d at 904.  Considering the four corners of Drs. Kanner=s and Silverman=s reports, we
conclude that the averments and opinions in each report contain more than mere
conclusory statements concerning the standard of care  for treating patients
with chest pain and burning sensations.  See Patel, 237 S.W.3d at
905. 








To hold that the trial court abused its discretion, we must
conclude the trial court acted in an arbitrary or unreasonable manner.  See
Wright, 79 S.W.3d at 52.  Though reasonable minds may differ in determining
what is required of a fair summary of the applicable standard of care, the
trial court=s decision was within the scope of its discretion.  See
Palacios, 46 S.W.3d at 875; Patel, 237 S.W.3d at 905; Larson,
197 S.W.3d at 304B05; see also Mem=l Hermann
Healthcare Sys., 230 S.W.3d at 757.  We overrule Dr. Pacha=s third issue.  

The trial court=s order is
affirmed.

 

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed July 22, 2008.

Panel consists of
Justices Frost, Seymore, and Guzman.

 









[1]  According to the Caseys= brief, this procedure involves inserting a videoscope
down a patient=s throat to visualize the esophagus and stomach.  Cf.
Gaut v. Quast, 505 S.W.2d 367, 368 (Tex. App.CHouston [14th Dist.] 1974, writ ref=d
n.r.e) (referring to a gastroscopy as a procedure performed Ato look down inside the stomach@).





[2]  According to the Caseys= brief, a myocardial infarction is commonly known as a
heart attack.  Cf. Martin v. Abilene Reg=l Med. Ctr.,
No. 11-04-00303-CV, 2006 WL 241509, at *4 (Tex. App.CEastland Feb. 2, 2006, no pet.) (referring to
myocardial infarction as a heart attack).





[3]  Dr. Pacha addresses the experts= qualifications to render expert opinions on the
standard of care and causation in two separate issues, which we will address
together.





[4]  The term Apracticing
medicine@ includes, but is not limited to, training residents
or students at an accredited medical school or serving as a consulting
physician to other physicians who provide patient care at the request of such
other physicians.  Tex. Civ. Prac. & Rem. Code Ann. ' 74.401(b).





[5]  Etiology approximately means Acause.@  Brown v.
State, No. 05-02-00207-CR, 2003 WL 21404050, at *3 (Tex. App.CDallas June 19, 2003, pet. struck) (referring to a
doctor=s testimony of being unable to determine the etiology
or cause of death); Leal v. Melcher, No. 14-94-01009-CV, 1996 WL 65379,
at *1 (Tex. App.CHouston [14th Dist.] Feb. 15, 1996, no pet.)
(referring to autopsy reports of an unclear etiology or Aunknown cause@).





[6]  An endoscopy involves injecting media, for example,
the videoscope in the gastroscopy in this case, to view parts of the body or to
diagnose obstructions therein.  Cf. Williams v. Nealon, 199 S.W.3d 462,
464 n.1 (Tex. App.CHouston [1st Dist.] 2006, pet. filed).





[7]  Tachycardia is a problem with heart rhythm.  See
Shaw v. State, 243 S.W.3d 647, 650 (Tex. Crim. App. 2007).





[8]  Dr. Pacha asserts in his brief that burning
sensations are not the same symptoms as chest pain, which are terms Dr. Kanner
used together and singly in referring to the symptoms which Casey presented to
Dr. Pacha.  However, Dr. Pacha offers no explanation of how a two-week burning
sensation in one=s chest would not be painful.  Moreover, medical
records reflect that Casey complained of chest pain both to his referring
physician and to Dr. Pacha, as noted in the x-ray report prepared by a
radiologist and reported to Dr. Pacha.