BEVERLY MALONEY v. WAKE HOSPITAL SYSTEMS, INC.

No. 7910SC446

(Filed 19 February 1980)

1. **Evidence § 50.2; Physicians, Surgeons, and Allied Professions § 15.1— cause of physical injury—expert testimony by nurse**

An expert witness is not disqualified from giving an expert opinion as to the cause of a physical injury simply because he is not a medical doctor. The trial court in this malpractice case erred in refusing to permit a nurse who was specially trained in intravenous therapy to state her opinion that burns on plaintiff's hand were caused by the improper intravenous administration of undiluted potassium chloride into the tissue of the hand where the court ruled that such testimony was inadmissible as a matter of law.

2. **Evidence § 50.2; Physicians, Surgeons, and Allied Professions § 15.1— cause of injury—exclusion of expert testimony—testimony not cumulative**

A nurse's opinion testimony that the improper intravenous administration of potassium chloride was *the* cause of an injury to plaintiff's hand was not properly excluded on the ground that it was cumulative where (1) the court ruled the testimony inadmissible as a matter of law and was not exercising its discretion to limit the number of witnesses, and (2) the testimony was not cumulative since the only other evidence supporting plaintiff's theory of causation was the testimony of a medical doctor who stated that a high concentration of potassium chloride released into the tissue surrounding the site of plaintiff's intravenous treatment *could* have caused plaintiff's injury.

APPEAL by plaintiff from *Bailey, Judge.* Order entered 15 December 1978 in Superior Court, WAKE County. Heard in the Court of Appeals 6 December 1979.

In this action the plaintiff is suing the defendant hospital for the malpractice of a nurse employed by defendant. On 25 June 1975, plaintiff was admitted to Wake Medical Center through the emergency room for treatment of a stomach disorder. During her stay at the hospital defendant was given intravenous (I.V.) treatment. I.V. treatment was initiated by nurse Mary Jo Kulyk on the night of defendant's admission to the hospital. On 27 June 1975, Kulyk, on the orders of a physician, administered a potassium chloride solution orally to the plaintiff. The purpose of this medication was to maintain normal concentrations of potassium in plaintiff's blood during her treatment. Plaintiff vomited the solution.

Kulyk was then ordered by Dr. Claudia Ann Peters Carbonetto, a resident physician practicing at the hospital, to administer the potassium intravenously. Plaintiff testified that she observed Kulyk inject undiluted potassium chloride into the I.V. tube. Kulyk testified that she properly diluted the solution before injecting it. After half of the solution was administered, plaintiff complained to Kulyk of a burning sensation in her hand, the site of entrance of the I.V. treatment. The burning persisted for three or four hours following the potassium treatment, and the hand became swollen. Later, the skin on plaintiff's hand turned a grayish color and this skin was surgically removed. Plaintiff underwent cosmetic surgery to replace the lost and scarred skin, which she claimed was only partially successful. Plaintiff claimed damages for past and future medical expenses incurred in treating the hand, permanent partial disability with respect to the use of the hand, lost wages, and pain and suffering.

At trial, plaintiff testified about her ordeal. Plaintiff offered the testimony of Judy Atkins, a nurse who had been specially trained in I.V. therapy, to show Kulyk had breached her duty of care to plaintiff and that the allegedly improperly administered potassium actually did cause the damage plaintiff sustained to her hand. The court declined to allow Atkins to testify as to causation of the injury, stating out of the presence of the jury that he did not believe an individual not licensed to diagnose or prescribe medical treatment could testify as to injury causation. Plaintiff also offered the testimony of her cosmetic surgeon, Dr. Vartan M. Davidian. Dr. Davidian testified as to his diagnosis of plaintiff's injury, and stated that if undiluted potassium were injected in plaintiff's vein, immediate death would have resulted. However, if the needle were placed outside of the vein, plaintiff's injuries could have been caused by the potassium.

Defendant presented the testimony of nurse Kulyk, one other nurse who had treated plaintiff at Wake Medical Center, and two physicians. The jury found that plaintiff had not been injured by the defendant's negligence, and the court entered judgment for the defendant. Plaintiff appeals from this judgment.

*Sanford, Adams, McCullough & Beard, by J. Allen Adams and Catherine B. Arrowood, for the plaintiff appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by Samuel G. Thompson, for the defendant appellee.*

WELLS, Judge.

Plaintiff has made numerous assignments of error regarding the trial court's exclusion of evidence, allegedly prejudicial remarks in the presence of the jury, charge to the jury, failure to require the reading of a portion of the deposition of one of defendant's witnesses, and precluding plaintiff from showing an exhibit to the jury during plaintiff's closing argument.

[1] The principal question we determine in this appeal is whether an expert who is not a medical doctor may give expert opinion testimony as to the cause of a physical injury.

Plaintiff called as her first expert witness Ms. Judy Atkins. Ms. Atkins' credentials — her education, experience, and skills — are directly at issue in resolving the question before us, and we summarize them here now. Ms. Atkins obtained an Associate Degree of Medicine at Central Piedmont Community College. Subsequently, she completed three years of nurses training at Charlotte Memorial Hospital, following which she attended school at the University of North Carolina at Chapel Hill. She was licensed as a registered nurse in 1969. In February 1972, she was employed as a staff nurse in acute care medicine at North Carolina Memorial Hospital. In 1973, she became a nursing supervisor at Memorial Hospital and was appointed coordinator of the I.V. therapy division. Her duties there included assisting in the organization and implementation of an I.V. team and working with the I.V. mixture service at Memorial. During her employment at Memorial, she served as president of the American Society of Intravenous Therapy and she participated in establishing a program to exchange ideas and presentations by physicians and pharmacists for other hospitals in North Carolina. Several of those meetings were held at Wake Medical Center. She assisted in establishing an I.V. therapy program at Wake Medical Center. Wake Memorial Hospital adopted an I.V. therapy manual almost identical to the one she developed for the University of North Carolina. Ms. Atkins continued to practice nursing and I.V.

therapy until September 1976, when she entered the School of Pharmacy of the University of North Carolina at Chapel Hill. At the time of the trial of this action, she was completing the equivalent of her fifth year of pharmacy school after just three years of study. Her study in pharmacy school related to her previous experience in I.V. therapy. During her experience, she has consulted with many pharmaceutical companies on I.V. administration and practices, and has served on an ad hoc committee of the United States Food and Drug Administration Center for Disease Control and the Pharmacy Appeal Convention for setting standards for preparation of I.V. drugs and on a similar committee whose purpose was to recommend national procedural standards for I.V. administration.

Following this recitation of credentials, counsel for plaintiff confronted Ms. Atkins with a hypothetical question asking if she had an opinion as to whether plaintiff's injury could or might have resulted from the administration of undiluted potassium chloride directly into the tube. The trial court sustained defendant's objection to the question. At this point in the trial, the record shows that the following events occurred.

MR. ADAMS: May I approach the bench?

COURT: I think I can shorten this up a lot if I let the jury go out.

MR. ADAMS: All right.

\*       \*       \*

(JURY RETIRES TO THE JURY ROOM.)

COURT: Mr. Adams, I have no doubt but that this lady is unquestionably an expert in the field of intravenous therapy and I am sure that she is as competent in that field as anybody I have ever known but you got [sic] her in the field of medicine and in the field of pharmacy. She is [sic] not yet graduated from [sic] pharmacy and I am not going to let her testify in those fields no matter what you want to do but if you want to get the answer to that in the record, now is the time to do it. I ain't never [sic] going to let it come in in the presence of the jury in the presence of this witness.

MR. ADAMS: That it takes a medical expert and not a nursing expert?

COURT: That is exactly what I am ruling. I think this lady would tell you here that she is not licensed to diagnose or to prescribe treatment for her field of expertise, to give the treatment in the profession as prescribed by medical people and not to make diagnosis, is that not correct, ma'am?

A. True.

MR. ADAMS: Can I ask her a few further qualifying questions to see if I can qualify her?

COURT: Yes, you can try that.

Q. Mrs. Atkins —

COURT: But it is going to be a long slow road I tell you.

Q. —as a result of your training and experience are you familiar with the injuries that may result, not the diagnosis, diagnosing of such injuries but what type of injuries may result from the improper administration of potassium chloride in I.V. solution?

A. Yes.

Q. And have you seen specifically in the course of your studies and experience seen [sic] what type of injuries result from such administration?

A. Yes.

Q. And has that been part of your training as such?

A. Both. I have both seen it in practice and had it taught to me in my educational process.

Q. So you do not diagnose the injury but once you see medical records as to what injury exists, do you feel that you are qualified to know whether that injury, particular injury could have come from a particular I.V. procedure?

A. Specifically from I.V. administered drugs I can discuss those things that might happen.

Q. And is it your duty to be familiar with parenteral fluids and their effects?

A. As a nurse, yes.

\*   \*   \*

Q. I will rephrase the question. Is it your duty to be familiar with I.V. administered fluids and their effects?

A. It is the duty of all nurses to be familiar with them because they are the people who administer them. It is not the pharmacists or the physicians.

Q. And are you familiar with the effect of potassium chloride injected into the tissue undiluted?

A. Yes.

Q. And it is not your job to diagnose a particular condition as found but once a doctor diagnoses it as being a particular type of a burn, is it within your training to be able to form an opinion as to what might have caused that in the way of I.V. fluids?

A. Yes.

Q. All right. So I would like to ask the question again.

COURT: Still sustained.

Had she been allowed to answer, Ms. Atkins would have testified that, in her opinion, the burn suffered by plaintiff was caused by undiluted concentrated bolus of potassium chloride ·flowing from the I.V. bag into the tube and then administered into the tissue in plaintiff's hand.

Plaintiff argues that the trial court erred in excluding Ms. Atkins' opinion testimony as to causation of plaintiff's injury. We agree. In North Carolina, the opinion testimony of an expert witness is competent if there is evidence to show that, through study or experience, or both, the witness has acquired such skill that he is better qualified than the jury to form an opinion on the particular subject of his testimony. *State v. Johnson,* 280 N.C. 281, 185 S.E. 2d 698 (1972).

We note that with respect to whether a skilled or expert witness possesses sufficient qualifications to be permitted to testify as to his opinion,

> . . . the unsound rule has sometimes been laid down that the witness must be one who employs his skill *professionally* or *commercially* . . . . But the only true criterion is: On *this subject* can a jury from *this person* receive appreciable help? In other words, the test is a relative one, depending on the particular subject and the particular witness with reference to that subject, and is not fixed or limited to any class of persons acting professionally.

7 Wigmore on Evidence § 1923, p. 21 (3d ed. 1940). *See also,* McCormick on Evidence § 13, pp. 29-30 (2d ed. 1972); 1 Stansbury's N.C. Evidence § 132, pp. 424-428 (Brandis rev. 1973). The qualifications of a medical expert are judged according to the same standards as those of expert witnesses in general:

> The common law . . . does not require that the expert witness on a medical subject shall be a person *duly licensed to practice medicine* . . . . Except as an indirect stimulus to obtain a license, such a rule is ill-advised, first, because the line between chemistry, biology, and medicine is too indefinite to admit of a practicable separation of topics and witnesses, and, secondly, because some of the most capable investigators have probably not needed or cared to obtain a license to practice medicine.

2 Wigmore on Evidence § 569, pp. 667-668 (3d ed. 1940). *See also, State v. Johnson, supra;* 2 Jones on Evidence § 14.13, p. 619 (6th ed. 1972); 1 Stansbury's N.C. Evidence § 135, pp. 439-440 (Brandis rev. 1973). Since we accept the principle that the giving of expert testimony should not be limited to those witnesses who are licensed in some particular field of endeavor, nor limited by whether such witnesses employ their skills professionally or commercially, there is accordingly no basis or justification for treating medical experts differently—for establishing a preferred or exclusive class among medical expert witnesses.

Our holding is additionally supported by the fact that nurses and other physician's assistants play a much greater role in the actual diagnosis and treatment of human ailments than previous-

ly. *See, e.g.,* Sadler and Sadler, *Recent Developments in the Law Relating to the Physician's Assistant,* 24 VAND. L. REV. 1193 (1971). The role of the nurse is critical to providing a high standard of health care in modern medicine. Her expertise is different from, but no less exalted than, that of the physician. It would be difficult to find a more valid illustration of that principle than the career of Ms. Atkins.

Defendant argues that we should sustain the trial court's exclusion of Ms. Atkins' testimony relating to causation on grounds that the trial court had the *discretionary* authority to keep this testimony out. We agree that the trial court's decision concerning whether or not a witness has qualified as an expert is ordinarily within the court's sound discretion. *Edwards v. Hamill,* 266 N.C. 304, 145 S.E. 2d 884 (1966). However,

> [w]here . . . the trial court is clothed with discretion, but rules as a matter of law, without the exercise of discretion, the offended party is entitled to have the proposition reconsidered and passed upon as a discretionary matter [citations omitted]. . . . "[W]here it appears that the judge below has ruled upon the matter before him upon a misapprehension of the law, the cause will be remanded to the superior court for rehearing in the true legal light." [Citation omitted.]

*Capps v. Lynch,* 253 N.C. 18, 22, 116 S.E. 2d 137, 141 (1960) (trial court mistaken as to its discretionary authority to admit privileged conversation between physician and patient). This general evidentiary principle has been specifically applied by our Supreme Court to a situation where a trial court excluded expert medical testimony under an erroneous view of the law. *Pridgen v. Gibson,* 194 N.C. 289, 139 S.E. 443 (1927) (general practitioner not excluded as a matter of law from giving expert testimony on the proper standard of treatment for an eye injury).

We readily accept the validity of defendant's position vis-a-vis the general rule. However, in the case before us, it is obvious from the previously quoted remarks of the trial court that the trial judge believed his discretionary authority was severely limited, if not entirely foreclosed, simply because Ms. Atkins was not licensed to diagnose illness or injury or prescribe treatment. As we previously stated, this view of our evidentiary law is erroneous. The license, if any, held by a witness may properly be

one fact for the court to take into account. However, the controlling factors for the court's consideration must be the education, knowledge, information, skill, and experience of the witness. The exclusion of Ms. Atkins' testimony, on grounds that such exclusion is mandated as a matter of law, constitutes reversible error.

[2]  Defendant also argues that the testimony of nurse Atkins is cumulative, and therefore its exclusion by the trial court was not prejudicial error. There is no question that the trial court has discretion to limit the number of witnesses a party may call where the additional evidence would merely be cumulative or where it would otherwise needlessly waste the time of the court. *State v. Wright*, 274 N.C. 380, 163 S.E. 2d 897 (1968); 1 Stansbury's N.C. Evidence § 21, p. 51 (Brandis rev. 1973). In the present case, however, the trial court did not exclude Ms. Atkins' testimony on this discretionary basis.

Furthermore, Ms. Atkins' testimony was not "cumulative". The only other evidence presented as to plaintiff's theory of causation was the testimony of Dr. Davidian, who stated that a high concentration of potassium chloride solution released into the tissue surrounding the site of plaintiff's I.V. treatment *could* have caused plaintiff's injury. Atkins testified that improperly administered potassium chloride was *the* cause of plaintiff's injury.

> Cumulative evidence is additional evidence of the same kind bearing on the same point. Thus when testimony has been given by one or more witnesses . . . and other witnesses are produced who testify to the same set of facts *and to no new fact*, the evidence given by such witnesses is merely cumulative. [Emphasis added.]

1 Jones on Evidence § 1:5, p. 6 (6th ed. 1972). Atkins' testimony, that improperly administered potassium chloride solution was *the* cause of plaintiff's injury, contains an element of certainty which distinguishes it from the testimony of Dr. Davidian, and her testimony was thus not subject to exclusion at the trial court's discretion on the basis that it was cumulative.

New trial.

Judges HEDRICK and MARTIN (Robert M.) concur.