Filed 11/8/13  Ray v. St. Francis Medical Center CA2/5
Second opn. following partial disposition by opn. 1/18/13

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARGUERITA RAY et al., | B239750 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. TC024308) |
| ST. FRANCIS MEDICAL CENTER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rose Hom, Judge.  Reversed.

Law Offices of Benjamin P. Wasserman and Benjamin P. Wasserman for Plaintiffs and Appellants.

LaFollette, Johnson, De Haas, Fesler & Ames, Louis H. De Haas and David J. Ozeran, for Defendant and Respondent.

# I. INTRODUCTION

Plaintiffs, Marguerita Ray and Frederick Hagen, appeal from a January 6, 2012 judgment for defendant, St. Francis Medical Center.  Plaintiffs complained defendant's medical care of Ms. Ray from February 25 to March 2, 2009, was medically negligent.  On November 1, 2011, the trial court granted defendant's summary judgment motion.  The trial court concluded a registered nurse, Dorothy A. Pollock, who provided a declaration for plaintiffs, was not competent to testify as to causation.  We disagree and reverse the judgment.

# II. BACKGROUND
## A. Complaint

On May 18, 2010, Plaintiffs filed their complaint.  On November 5, 2010, Plaintiffs filed their second amended complaint.  Plaintiffs made the following allegations.  Mr. Hagen and Ms. Ray are husband and wife and reside in Los Angeles County.  Defendant is a hospital located in Los Angeles County.  On February 25, 2009, Ms. Ray was admitted to defendant for surgical repair of her right hip.  Defendant provided plaintiff with diagnosis and treatment at the hospital until March 2, 2009.  Ms. Ray alleges defendant's nursing staff failed to properly assist her with bed pans, causing her buttock to become grossly infected.  Ms. Ray alleges medical malpractice against defendant.  Mr. Hagen alleges consortium loss.

## B. Summary Judgment Motion, Opposition And Reply

On July 14, 2011, defendant filed a summary judgment motion.  Defendant argued plaintiffs cannot establish a breach of the standard of care of a nurse.  Defendant contended plaintiffs could not demonstrate malpractice caused injury.  Defendant also argued Mr. Hagen's consortium loss claim must fail as a necessarily dependent

2

underlying claim. Defendant submitted in support of its motion a declaration from Dr. Isaac Gorbaty, a board-certified physician. Dr. Gorbaty was familiar with the standard of care in medical profession for facilities like that of defendant based on his education and years of experience. Dr. Gorbaty declared that based on a review of Ms. Ray's medical records, defendant provided treatment that complied with the standard of care in the professional community.

On October 21, 2011, plaintiffs filed their opposition. Plaintiffs argued Dr. Gorbaty failed to provide a proper basis for his opinion. In the alternative, plaintiffs relied on the declaration of registered nurse, Ms. Pollock on the causation issue. Ms. Pollock testified she graduated from nursing school in 1968. She received specialty training in advanced cardiac life support and pediatric advanced life support since 1997. She was certified as an operating room nurse since 1997 and a legal nurse consultant since 1999. Ms. Pollock declared: "I possess over 40 years of general nursing practice experience including coronary care . . . and dialysis; current role emphasis and clinical nursing expertise focuses on operating room/surgical nursing practice for the past 38 years in both generalized and specialty surgical procedures in ophthalmology, orthopedics, [ear, nose, and throat], gynecology, neurology, trauma, laparoscopy, endoscopy, laser and pain management including pre-operative and post-operative medical surgical nursing care." She concluded defendant's nursing staff's post-operative care fell below the applicable standard of care. On October 27, 2011, defendant filed its reply. Defendant objected to Ms. Pollack's declaration because she was not competent to provide a causation opinion. Defendant argued Ms. Pollock may have an opinion concerning the standard of care but could not testify as to whether negligence caused harm.

### C.  Undisputed Facts

Ms. Ray was admitted to defendant on February 25, 2009, for revision right total hip replacement. Dr. Thomas K. Peterson performed the surgical procedure. During

3

surgery, Ms. Ray was placed on her left side. Surgery was performed without complication and Ms. Ray's postoperative condition was noted as stable. Following surgery, Ms. Ray was transferred to a gurney and taken to the post-anesthesia recovery room. Ms. Ray was subsequently transferred to the floor in stable condition. Dr. Peterson entered instructions for Ms. Ray to remain on bed rest on the day of surgery.

Follow-up X-rays revealed a dislocation of the femoral portion of Ms. Ray's right hip. Ms. Ray consented for Dr. Peterson to perform a closed reduction procedure on February 26. Plaintiff remained on bed rest for the remainder of February 25. On February 26, Dr. Peterson performed the closed reduction procedure on Ms. Ray's right hip without complication. Ms. Ray was later transferred to the floor in stable condition. On February 27, Ms. Ray underwent a physical therapy evaluation.

On March 1, 2009, Ms. Ray had three small skin tears on her left buttock and skin repair lotion was applied. On March 2, 2009, Ms. Ray was transferred to defendant's skilled nursing facility. Dr. Peterson was the physician in charge. Ms. Ray was noted as having an ulcer on her coccyx and left buttock. Dr. Peterson ordered physical and occupational therapy and calazime cream applied to Ms. Ray's skin tears with each position change. Plaintiff was discharged from the nursing facility on March 24, 2009.

D. Disputed Facts

Defendant asserted the following disputed facts. While at the hospital, Ms. Ray was turned and repositioned regularly beginning February 26 through March 2. She was continuously monitored. Her skin was noted as being warm and dry with color within normal limits. Skin lotion and skin cleanser were regularly used. Ms. Ray was noted to be out of bed and ambulating.

Plaintiffs asserted the following disputed facts. Ms. Ray's skin assessment records were incomplete and improperly dated. Ms. Ray was given a bedpan that was not sterile. The nurse applied the bedpan under Ms. Ray. This caused pain and tears to Ms. Ray's

4

skin on her buttock. After Ms. Ray used the bedpan, defendant's nursing staff did not come in to remove it until the next morning. Ms. Ray testified she did not have a railing to pull herself up, causing her to slide or wiggle up on the bed sheets. Ms. Pollock declared defendant's nursing staff failed to perform preventive and protective skin care measures. Ms. Pollock declared the failure to properly use bedpan procedures caused skin tears in Ms. Ray's buttocks region which led to the ulcer.

## E. Motion And Order

On November 1, 2011, the trial court held a motion hearing regarding the summary judgment motion. Plaintiffs argued nurses have been able to testify regarding medical causation in other jurisdictions. Defendant contended in California no court had permitted a nurse to testify regarding medical causation.

The trial court found Dr. Gorbaty's declaration sufficient to meet the moving party's burden on issues of breach of duty and causation. The trial court found Ms. Pollock could not competently testify regarding the element of causation. On January 6, 2012, the trial court entered judgment for defendant and against plaintiffs. Plaintiffs subsequently appealed.

## III. DISCUSSION
### A. Summary Judgment Standard Of Review

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851, our Supreme Court described a party's burdens on summary judgment motions as follows : "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a

5

reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . [¶] [T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (Fns. omitted, see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.) We review the trial court's decision to grant the summary judgment motion de novo. (*Coral Const., Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67-68.) The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco*, *supra*, 50 Cal.4th at p. 336; *Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190, 1196.) In addition, a summary judgment motion is directed to the issues framed by the pleadings. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673, disapproved on another point in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5.) Those are the only issues a motion for summary judgment must address. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249-1250; *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 364.)

B. Opinion Testimony

The Court of Appeal has held: "'[I]n any medical malpractice action, the plaintiff must establish: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."

6

(*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 . . . .].)'" (*Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606; *Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 468, fn. 2 (*Avivi*).) Opinion testimony from a properly qualified witness is generally necessary to demonstrate the elements for medical malpractice claims. (*Barris v. County of Los Angeles* (1999) 20 Cal.4th 101, 108, fn. 1; *Avivi*, *supra*, at p. 467, fn. 1.) Evidence Code section 720, subdivision (a) provides: "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert."

As noted, the trial court ruled Ms. Pollock was not competent to testify regarding causation. Our Supreme Court has made it clear as a matter of law, "[T]he [trial] court will be deemed to have abused its discretion if the witness has disclosed sufficient knowledge of the subject to entitle his opinion to go to the jury." (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 39; *EHP Glendale v. County of Los Angeles* (2011) 193 Cal.App.4th 262, 276.) A trial court's decision to exclude opinion testimony is reviewed for abuse of discretion. (*Avivi*, *supra*, 159 Cal.App.4th at p. 467 citing *People v. Bolin* (1998) 18 Cal.4th 297, 321-322.) Plaintiffs contend: the trial court abused its discretion by finding Ms. Pollock not competent to testify regarding causation; Ms. Pollock could not testify regarding medical causation as a matter of law; and Ms. Pollock was not qualified to offer opinion testimony in this case. The trial court's order sustaining defendant's objection was a determination beyond the allowable scope of judicial discretion. Courts in other jurisdictions have permitted nurses to testify in medical malpractice claims on causation and other issues. (See, e.g., *Gaines v. Comanche County Medical Hospital* (Okla. 2006) 143 P.3d 203, 206, fn. 10; *Baylor University Medical Center v. Rosa* (Tex.Ct.App. 2007) 240 S.W.3d 565, 570; *Maloney v. Wake Hospital Systems, Inc.* (N.C. App. 1980) 262 S.E.2d 680, 683.) In these instances, the nurse demonstrated qualification and knowledge regarding the relevant issue. (*Gaines v. Comanche County Medical Hospital*, *supra*, 143 P.3d at p. 206, fn. 10 [nurse could testify regarding

decubitus ulcers because she was certified in wound care and had extensive experience with care of critically ill and elderly]; *Baylor University Medical Center v. Rosa*, *supra*, 240 S.W.3d at p. 570 [nurse, certified in critical care, with a nursing master's degree, who had experience caring for post-operative patients pursuant to physicians' cold therapy orders could testify concerning such a treatment]; *Maloney v. Wake Hospital Systems, Inc.*, *supra*, 262 S.E.2d at p. 683 [nurse found properly qualified to testify regarding intravenous potassium solution causing disfigurement based on her expertise in field of intravenous therapy].)  The same is true here.  Ms. Pollock's extensive training and experience permitted her to express an opinion on the causation issue.  The trial court did not have the discretion to sustain defendant's objection.

IV.  DISPOSITION

The judgment is reversed.  Plaintiffs, Marguerita Ray and Frederick Hagen, are awarded their appeal costs from defendant, St. Francis Medical Center.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

KRIEGLER, J.

KUMAR, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8