McGEE, Chief Judge.
Karyn Wilson ("Ms. Wilson") and Thomas Baumgardner, individually, and Walter L. Hart, IV, guardian ad litem for B.B., (collectively "plaintiffs") appeal from judgment entered in favor of Ashley Women's Center, P.A. ("Ashley Women's Center"), George Daniel Jacobs, M.D. ("Dr. Jacobs"), and Nancy Kuney, CNM ("Kuney") (collectively "defendants") and dismissing plaintiffs' claims with prejudice. For the reasons stated herein, we hold no error.
I. Background
On 29 September 2011, plaintiffs filed a complaint against Gaston Memorial Hospital, Incorporated ("Gaston Memorial"), Caromont Medical Group, Inc., Ashley Women's CMG, LLC, and defendants. The complaint alleged that Ms. Wilson came under the medical care of defendants and Gaston Memorial for medical management of her pregnancy. On 12 March 2007, she was admitted to Gaston Memorial for medical induction of labor for her pregnancy which had progressed one week past her expected delivery date of 5 March 2007. Ms. Wilson was under the care and responsibility of the agents, servants, and/or employees of Ashley Women's Center and Gaston Memorial. On 12 March 2007, a plan of "Pitocin induction of labor next several days" was noted in the medical chart. On 13 March 2007, Pitocin was continued with increasing dosages throughout the day. On the morning of 14 March 2007, Dr. Jacobs "assumed responsibility for the obstetrical care and treatment" of Ms. Wilson during her labor at Gaston Memorial and Kuney assumed responsibility for providing midwifery care to Ms. Wilson.
Plaintiffs also alleged that at approximately 13:33 hours on 14 March 2007, Kuney made a record in the medical chart that, after consultation with Dr. Jacobs, Pitocin would be administered again to Ms. Wilson. At approximately 15:00 hours, it was noted that Kuney had ordered that the dosage of Pitocin should remain at six mu/min. At 17:16 hours, Kuney conducted a vaginal exam of Ms. Wilson and noted that her cervix was six centimeters dilated and consulted with Dr. Jacobs in regard to Ms. Wilson. At approximately 18:09 hours, Dr. Jacobs performed a vaginal examination of Ms. Wilson and noted that she was fully dilated at ten centimeters. The administration of Pitocin was stopped and Kuney was paged. Ms. Wilson began pushing at 18:22 hours. At approximately 19:48 hours, Kuney assessed that Ms. Wilson was "making slow progress with pushing."
At approximately 21:21 hours, B.B.'s head was delivered. B.B.'s delivery was complicated by shoulder dystocia. For two minutes, Dr. Jacobs and Kuney made several unsuccessful attempts to deliver the body of B.B. At 21:23 hours, the entire body of B.B. was successfully delivered by Dr. Jacobs. B.B.'s medical chart stated the following: "Prolonged fundal pressure, nuchal x 1, shoulder dystocia." Gaston Memorial's admission summary contained a note that B.B. "had significant head molding with caput/bruising with excoriation, and also had bruising of the face, lips and chest near the left nipple area, and also that there was no movement noted in the left arm." On 15 August 2007, B.B. was seen by Dr. Scott H. Kozin at Shriners Hospital in Philadelphia, Pennsylvania. B.B. was diagnosed with a brachial plexus palsy and Horner's syndrome on the left side, requiring nerve graft surgery. Dr. Kozin performed "brachial plexus exploration, neurolysis and nerve grafting surgery with a clavicular osteotomy on September 4, 2007. A nerve avulsion at C6 and a partial nerve avulsion at C7 were observed at that time." Based on the foregoing allegations, plaintiffs brought a medical negligence claim against defendants.
Plaintiffs voluntarily dismissed, without prejudice, all claims against Caromont Medical Group, Inc., Ashley Women's CMG, LLC, and Gaston Memorial.
On 4 August 2015, plaintiffs filed a motion to bifurcate the trial, which was granted.
The liability phase of this case came on for trial at the 17 August 2016 session of Gaston County Civil Superior Court, the Honorable Linwood O. Foust presiding. On 3 September 2015, a jury returned a verdict in favor of defendants. Judgment was entered 16 September 2015. Plaintiffs appeal.
II. Discussion
Plaintiffs advance three issues on appeal. First, plaintiffs argue that the trial court erred by excluding Robert Allen's causation opinions. Second, plaintiffs contend that the trial court erred by excluding evidence regarding prior lawsuits and claims against Kuney. Third, plaintiffs argue that the trial court erred in using North Carolina's Civil Pattern Jury Instruction 809.00 to instruct the jury. We address each argument in turn.
A. Causation Opinion of Robert Allen
Plaintiffs contend that the trial court erred by excluding Robert Allen's causation opinions. Specifically, plaintiffs contend that the trial court abused its discretion by concluding that only medical doctors may opine on the issue of causation. Plaintiffs cite to Maloney v. Wake Hospital Systems, Inc. , 45 N.C. App. 172, 262 S.E.2d 680 (1980), in support of their argument.
When reviewing the ruling of a trial court concerning the admissibility of expert opinion testimony, the standard of review for an appellate court is whether the trial court committed an abuse of discretion. An [a]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.
State v. Davis , 239 N.C. App. 522, 528, 768 S.E.2d 903, 907 (2015) (citation and internal quotation marks omitted).
It is well established that "[o]ur courts rely on medical experts to show medical causation because the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen[.]" Azar v. Presbyterian Hosp. , 191 N.C. App. 367, 371, 663 S.E.2d 450, 453 (2008) (internal quotation marks and citation omitted).
Here, Robert Allen ("Dr. Allen") was tendered and accepted by the trial court as an expert in biomedical engineering and the assessment of forces employed in the management of shoulder dystocia. Dr. Allen testified during voir dire that he is not a medical doctor but has a Ph.D. in engineering; has never delivered a baby; has never been in a delivery room where a live shoulder dystocia event has occurred; has never measured the forces during a live birth where a permanent shoulder dystocia or permanent brachial plexus injury has occurred; was not qualified to offer any medical opinions; and was not qualified to offer standard of care opinions.
Although plaintiffs contend that the trial court did not allow Dr. Allen to testify as to causation based on a conclusion that only medical doctors may opine on the issue of causation, this is a mischaracterization of the trial court's holding. In the present case, the trial court concluded as follows:
[T]he Court will not allow Dr. Allen to give [an] opinion as to the cause of the plaintiff's injury. In the Court's discretion the Court will not allow that.
This is a medical malpractice case. Dr. Allen, according to the plaintiff, will provide mechanical evidence. This, in the Court's opinion, would be-would not aid and not assist the jury to find a fact and make a determination in this case. The jury would be misled by the opinion being unable to separate the mechanics from the medical. Dr. Allen is not qualified to give his opinion on medical issues and causation as it relates to medical issues.
....
Dr. Allen, while he is an engineer, biomedical engineer, he does not have medical training. The Court recognizes he has written a number of articles about-to determine causation, or give an opinion on causation in this case, but it does not fall within his area of expertise and would not be of assistance to the jury.
Therefore, the trial court concluded that Dr. Allen could not render an opinion on medical causation in this case because he did not have medical training.
In Maloney , the plaintiff alleged nurse malpractice after the defendant nurse administered undiluted potassium chloride intravenously. Maloney , 45 N.C. App. at 172, 262 S.E.2d at 680-81. At trial, the plaintiff offered the testimony of Judy Atkins, a nurse who had been specially trained in intravenous therapy, to show that the defendant nurse had breached her duty of care to the plaintiff and did cause the plaintiff's injuries. Id. at 173, 262 S.E.2d at 681. The trial court did not allow Judy Atkins to testify as to the causation issue, stating that "he did not believe an individual not licensed to diagnose or prescribe medical treatment could testify as to injury causation." Id. On appeal, the issue before our Court was "whether an expert who is not a medical doctor may give expert opinion testimony as to the cause of a physical injury." Id. at 174, 262 S.E.2d at 681. Our Court held as follows, in pertinent part:
In North Carolina, the opinion testimony of an expert witness is competent if there is evidence to show that, through study or experience, or both, the witness has acquired such skill that he is better qualified than the jury to form an opinion on the particular subject of his testimony.
....
The common law ... does not require that the expert witness on a medical subject shall be a person duly licensed to practice medicine .
Id. at 177-78, 262 S.E.2d at 683 (citations omitted) (emphasis in original). Our Court recognized that
nurses ... play a much greater role in the actual diagnosis and treatment of human ailments than previously. The role of the nurse is critical to providing a high standard of health care in modern medicine. Her expertise is different from, but no less exalted than, that of a physician.
Id. at 178-79, 262 S.E.2d at 684.
After thoughtful consideration, we find the circumstances of the present case distinguishable from those found in Maloney . In Maloney , the nurse expert witness had extensive clinical experience in providing intravenous therapy to patients. Id. at 174-75, 262 S.E.2d at 682. Here, Dr. Allen had no medical training or clinical experience. He was not a healthcare provider. He had never delivered a baby, never been in a delivery room where a live shoulder dystocia event had occurred, and had never measured the forces during a live birth where a permanent shoulder dystocia or permanent brachial plexus injury had occurred. Accordingly, we hold that the trial court did not abuse its discretion by excluding causation testimony from Dr. Allen.
Furthermore, even assuming arguendo that the trial court erred by excluding causation testimony from Dr. Allen, we are not convinced that it amounted to prejudicial error. Wise v. Alcoa, Inc. , 231 N.C. App. 159, 166, 752 S.E.2d 172, 177 (2013) (citation omitted) ("The burden is on the appellant to not only show error, but also to show that he was prejudiced and a different result would have likely ensued had the error not occurred."). Plaintiffs had three expert witnesses, including a pediatric neurologist, obstetrician, and certified nurse midwife, all testify that traction and movement to B.B.'s head and neck caused his injuries. Despite this evidence, the jury found in favor of defendants and admission of Dr. Allen's causation opinion would have only corroborated other testimony in this case.
B. Evidence of Prior Lawsuits and Claims against Kuney
In their second issue on appeal, plaintiffs argue that the trial court erred by excluding evidence regarding prior lawsuits and claims against Kuney for her alleged failure to manage shoulder dystocia safely and without injury, and Dr. Jacob's knowledge of Kuney's past, because it was highly probative and outweighed any risk of undue prejudice. We disagree.
Pursuant to Rule 404(b) of the North Carolina Rules of Evidence, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2015). "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." Id. Moreover, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2015). "We review de novo the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion." State v. Beckelheimer , 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012).
On appeal, plaintiffs argue that for Kuney to have managed "only two shoulder dystocias in her career, resulting in two babies with the same pattern of severe and permanent brachial plexus nerve injury , is relevant and highly probative evidence" concerning Kuney's personal experience and Dr. Jacob's decision to allow her to manage the shoulder dystocia.
First, we note that there is some discrepancy as to the number of shoulder dystocias Kuney has managed in her career. Kuney testified in a 2012 deposition that she had managed shoulder dystocia on two occasions. However, at trial, Kuney testified that she "misspoke" in her deposition testimony and although she could not provide the exact number of times, she had managed more than two shoulder dystocias.
At trial, plaintiffs sought to elicit testimony from Kuney regarding a prior lawsuit filed against Kuney in Virginia from the early 2000's. This prior lawsuit, which was ultimately resolved in Kuney's favor, involved a baby whose delivery was complicated by shoulder dystocia. The trial court prohibited any reference to lawsuits or prior claims, including their outcomes, against Kuney. The trial court also prohibited any reference to Dr. Jacob's knowledge of the prior Virginia lawsuit.
Plaintiffs contend that evidence of the prior lawsuit against Kuney and Dr. Jacob's knowledge of the lawsuit were "both relevant and highly probative." Plaintiffs suggest that because Kuney testified that she only used "gentle pressure" and "always" used the same degree of pressure or force during the delivery of a baby, evidence of the prior lawsuit would have assisted the jury in assessing Kuney's credibility. In addition, plaintiffs argue that the evidence of Dr. Jacob's knowledge of Kuney's prior lawsuit would have assisted the jury in evaluating Dr. Jacob's authorization of Kuney to manage the shoulder dystocia in the present case.
Plaintiffs' arguments have no merit. The trial court allowed plaintiffs to ask Kuney about her 2012 deposition testimony and the jury had the opportunity to assess Kuney's credibility when she testified at trial. Additionally, our Court has held that "[i]n North Carolina, evidence of prior lawsuits against a defendant in a medical malpractice action is not relevant to whether a physician was negligent in the current case. Furthermore, evidence of a prior negligence action against defendants threatens substantial prejudice to the defendants." Gray v. Allen , 197 N.C. App. 349, 355-56, 677 S.E.2d 862, 867 (2009) (internal citation omitted). Even assuming arguendo that this evidence was admissible under Rule 404(b), it is still within the trial court's discretion to make a ruling on admissibility based on the prejudicial effect of the evidence relative to its probative value. Accordingly, we hold that the trial court did not err by excluding evidence regarding prior lawsuits and claims against Kuney and Dr. Jacob's knowledge of the aforementioned.
C. Jury Instructions
In their last argument on appeal, plaintiffs contend that the trial court erred by instructing the jury from North Carolina Pattern Jury Instruction Civil 809.00. We disagree.
On appeal, this Court considers a jury charge contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.] The party asserting error bears the burden of showing that the jury was misled or that the verdict was affected by an omitted instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.
Hammel v. USF Dugan, Inc. , 178 N.C. App. 344, 347, 631 S.E.2d 174, 177 (2006) (internal citations and quotation marks omitted).
Here, the trial court instructed the jury in accordance with N.C.P.I-Civ 809.00 as follows, in pertinent part:
The law does not require of a healthcare provider absolute accuracy either in his or her practice or in his or her judgment. It does not hold him or her to a standard of infallibility nor does it require of him or her the utmost degree or skill in learning known only to a few in his or her profession. The law only requires a healthcare provider to have used those standards of practice exercised by members of the same healthcare profession with similar training and experience situated in the same or similar communities at the time the health care is rendered.
Plaintiffs argue that N.C.P.I.-Civ 809.00 inaccurately states the law of North Carolina. Specifically, plaintiffs argue that the pattern jury instruction fails to take into account the three duties owed by defendants, that it contradicts other language in the instructions given by the trial court, and that it misinforms and misleads the jury as to the law. Plaintiffs rely on the Supreme Court's description of a physician's duty in Hunt v. Bradshaw , 242 N.C. 517, 88 S.E.2d 762 (1955), in support of their argument.
Hunt provided as follows, in pertinent part:
A physician or surgeon who undertakes to render professional services must meet these requirements: (1) He must possess the degree of professional learning, skill and ability which others similarly situated ordinarily possess; (2) he must exercise reasonable care and diligence in the application of his knowledge and skill to the patient's case; and (3) he must use his best judgment in the treatment and care of his patient.
Id. at 521, 88 S.E.2d at 765.
We first note that "[t]his Court has recognized that the preferred method of jury instruction is the use of the approved guidelines of the North Carolina Pattern Jury Instructions." Caudill v. Smith , 117 N.C. App. 64, 70, 450 S.E.2d 8, 13 (1994). "Jury instructions in accord with a previously approved pattern jury instruction provide the jury with an understandable explanation of the law." Carrington v. Emory , 179 N.C. App. 827, 829, 635 S.E.2d 532, 534 (2006). Viewing the jury instruction as a whole and in context, we observe that prior to giving the challenged jury instruction, the trial court instructed the jury regarding the three duties referenced in Hunt :
As to the first thing the plaintiff must prove, negligence refers to a person's failure to follow a duty of conduct imposed by law. Every healthcare provider is under a duty to use their best judgment in the treatment and care of their patients, to use reasonable care and diligence in the application of their knowledge and skill to their patient's care, and to provide health care in accordance with the standards of practice among members of the same healthcare profession with similar training and experience situated in the same or similar communities at the time the health care is rendered. A healthcare provider's violation of any one or more of these duties of care is negligence.
Significantly, subsequent to the decision in Hunt, our Supreme Court stated in Wall v. Stout , 310 N.C. 184, 311 S.E.2d 571 (1984), that the Hunt standard was "completely unitary in nature, combining in one test the exercise of 'best judgment,' 'reasonable care and diligence' and compliance with the 'standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities.' " Id. at 193, 311 S.E.2d at 577 (emphasis in original). Based on the foregoing, we see no basis for concluding that the trial court erred in giving this pattern instruction.
III. Conclusion
We hold that the trial court did not err by excluding Dr. Allen's causation opinions, by excluding evidence regarding prior lawsuits and claims against Kuney, and by instructing the jury with N.C.P.I-Civ. 809.00.
NO ERROR.
Report per Rule 30(e).
Judges McCULLOUGH and DAVIS concur.
Judge McCullough concurred in this opinion prior to 24 April 2017.